[Cite as *Slentz v. Hasington, L.L.C.*, 2026-Ohio-2726.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

SUSAN SLENTZ et al.,

Plaintiffs-Appellees,

v.

HASINGTON, LLC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CA 0988

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2024 CVH 30609

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Robert E. Soles Jr.*, *Atty. Kara Dodson*, and *Atty. Robert E. Soles, III*, Law Offices of Robert E. Soles, Jr., Co., LPA, for Plaintiffs-Appellees

*Atty. Jeffrey R. Jakmides*, for Defendant-Appellant

Dated: July 13, 2026

**WAITE, P.J.**

{¶1}   Appellant Hasington, LLC appeals a November 19, 2025 judgment entry of the Carroll County Court of Common Pleas granting summary judgment in favor of Appellees Susan Slentz et al.   Appellant raises both a procedural and substantive argument challenging the trial court's decision requiring it to remove a shed partially encroaching on Appellees' property.   Appellant LLC is actually comprised of a single attorney who represented herself *pro se* before the trial court.   It contends the decision of the court to deny a motion for an indefinite continuance or a second lengthy continuance was an abuse of the court's discretion.   In the alternative, Appellant LLC argues that the trial court erred in granting summary judgment in favor of Appellees and requiring it to remove the shed.   However, the court was well within its discretionary powers to deny the continuance in this matter and, based on the evidence in this record, there is no question of fact in this matter on which Appellant can prevail, and Appellees are entitled by law to the relief sought.   For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

{¶2}   The subject matter of this dispute involves a shed that encroaches over the neighboring property line.   On appeal, Appellant challenges not only the substantive decision of the court pertaining to the shed, but also procedurally challenges the court's scheduling orders.

<u>Case No. 25 CA 0988</u>

{¶3}  Again, Appellant LLC is solely owned by one attorney, Hwa Lumley.  Lumley represented the LLC in this matter at the trial court level.  While Lumley undertook to represent her LLC in the trial court, newly hired counsel represents Appellant on appeal.

{¶4}  Appellant and Appellees each own real property on parcels that were originally separated by an alley, twelve feet in width, that was owned by the Village of Minerva ("Village").  Appellant owns the property located at 103 W. Plain St. (Plat 56).  Appellees own the property located at 101 W. Plain St. (Plat 57).  The Village-owned alley ran in between both properties, which are located next to each other.  The alley continued past these properties, through the middle of two plats located behind Appellant and Appellees, both owned by James L. Van Pelt.  The four properties created a square, with the alley running directly through the middle.  The alley appears to have started at the front acreage of W. Plain St. and ended at the street abutting Van Pelt's front acreage.  The Van Pelt properties are not at issue in this appeal.

{¶5}  Appellant had leased its property to a renter, however, the record does not reflect how long the property was rented.  At some unknown date, Appellant, or its predecessor in title, constructed a shed towards the back end of the alley.  Appellant's renters used the alley as a driveway.  The shed is located in the exact middle of the alley's width, and at the back of its property line, near the Van Pelt line but not encroaching on that property.  It is unclear whether Appellees ever used this alley.  From a black and white photograph attached to the complaint, the alley appears to have a surface consisting of neatly installed bricks, but there is no indication as to when these were installed or by whom.  The shed has a garage door and is made of wooden or vinyl siding, in overall fair to good condition.

**{¶6}** On June 28, 2023, the Village vacated the alley, awarding one-half of the width (six feet) to both Appellant and Appellees, and six feet to each of Van Pelt's two properties. Hence, each of the parties, here, own half of the alley as it runs along their former property line.

**{¶7}** In vacating the alley, the Village created four new plats. Relevant to this appeal, six feet in width abutting Appellant's property became Plat 56-A and the remaining six feet in width abutting Appellees' property became Plat 57-A.

**{¶8}** Shortly after the Village vacated the alley, Appellees demanded that the shed, which encroached on their newly obtained property, be removed. The parties became contentious, with Appellees allegedly threatening to cut the shed in half, leading to the instant action.

**{¶9}** On November 12, 2024, Appellees filed a complaint against Appellant. Within the complaint, Appellees raised two claims: trespass, seeking a permanent injunction, and ejectment, seeking a preliminary and permanent injunction. Appellant filed an answer and a counterclaim asserting the existence of a prescriptive easement and raising the issue of unclean hands. Shortly thereafter, the trial court judge recused and the Ohio Supreme Court appointed a visiting judge.

**{¶10}** According to Appellant, on April 14, 2025, a pretrial conference was held where Appellant's counsel (Lumley) informed the court and opposing side that she would be travelling to Korea to begin in vitro fertilization ("IVF") treatment. Lumley told both opposing counsel and the court that she would need to be in Korea for two to three months. This conference was apparently not recorded and no transcripts have been filed. However, a judgment entry dated April 15, 2025 does provide the following:

[T]he parties have requested the Court issue Scheduling Orders for the filing and consideration of the Cross Motions for Summary Judgement, and **defer** the scheduling of a Bench Trial relating to the **Injunctive Relief** Claims and Counterclaims and Jury Trial relating to the **Monetary Damages** Claims and Counterclaims.

(4/15/25 J.E.) The order also set filing deadlines. Cross motions for summary judgment were to be filed by October 1, 2025. Any motions in opposition were to be filed by October 29, 2025, and reply briefs, if any, had a deadline of November 12, 2025.

{¶11} It appears from Appellant's brief that she arrived in Korea in May of 2025. On May 21, 2025, Appellees filed a motion for summary judgment, which Appellant's counsel apparently did not receive. When the court informed Appellees that it would not consider the motion due to its earlier scheduling order, on July 10, 2025, Appellees filed a motion seeking to accelerate the scheduling calendar.

{¶12} On July 17, 2025, the court responded to Appellees' motion by accelerating the scheduling calendar. Of significance, the judge determined the court:

FINDS that the Interim Scheduling Orders issued by Judgment Entry filed **04/15/2025** provided for the filing of Dispositive Motions by **10/01/2025,** primarily because legal counsel for the Defendant apprised legal counsel for [Appellees], and the Court, that she would be out of the country for three months during the summer.

FINDS that upon reconsideration of the Interim Scheduling Orders as a result of Plaintiffs' **07/10/2025** Motion, the undersigned concludes that

Case No. 25 CA 0988

Defendant's legal counsel almost assuredly has access to the internet and, there, is able to submit the affirmative and responsive pleadings[.]

(7/17/25 J.E.)

{¶13} On July 29, 2025, Appellant's counsel filed a handwritten response motion following this entry explaining that she was still in Korea and had no access to "legal tools" or office equipment, and requesting the court to vacate its entry accelerating the calendar. While not stated within counsel's motion, according to Appellant's appellate brief, Lumley had no access to the internet in Korea. Appellant's counsel did not explain how she learned the court had accelerated the calendar, but explained that she also did not have the physical case file or word processing software to adequately draft any meaningful summary judgment motion, as she had not expected the court to accelerate the calendar. Appellant also claims in its appellate brief that counsel explained her response to the entry had to be handwritten, photographed, and emailed to a third-party in Ohio who filed the motion. (Appellant's Brf., p. 8.) We note that if Lumley was able to email her handwritten motion, it appears that she did, in fact, have at least some internet access. In Lumley's motion to the trial court she sought several remedies, including requesting an indefinite stay beyond the original delayed calendar or a continuance of 120 days, along with court costs and attorney fees. In apparent response, the court reinstated its original April 15th scheduling order and indicated that it would not rule on Appellees' motion for summary judgment until November. However, the court did not grant any additional continuance beyond the dates contained in its original scheduling order.

{¶14} On October 27, 2025, Appellant filed a motion that combined a request for leave to file an interlocutory appeal, a motion for reconsideration, a motion for modification

Case No. 25 CA 0988

of deadlines, and a filing that appears to be a motion seeking leave to file a motion for summary judgment. On November 3, 2025, the court denied the combined motion.

{¶15} On November 19, 2025, the court granted Appellees' motion for summary judgment on the underlying claims in the complaint and ordered that the shed be removed within thirty days. On December 16, 2025, the trial court issued a stay of its ruling pending appeal.

{¶16} For ease of understanding, Appellant's arguments will be addressed out of order.

ASSIGNMENT OF ERROR NO. 2

The Trial Court Denied Defendant a Meaningful Opportunity to Be Heard in Violation of Due Process.

{¶17} Appellant claims that the trial court abused its discretion in failing to grant further extensions of time in this matter, which violated Appellant's due process rights. Appellant begins by stating that Lumley disclosed her trip to the trial court and opposing counsel prior to leaving the country. The April 15, 2025 scheduling order was put into place to accommodate her trip and allow her to continue representation while also allowing her time to seek IVF treatment. Despite the fact that both the parties and the court understood her situation and the dates she would be gone, and scheduling was established to accommodate this situation, Appellees filed a motion for summary judgment and a motion to accelerate the calendar while Lumley was already in Korea and unable to monitor legal correspondence. Appellant complains that the court ruled on Appellees' motion and accelerated the calendar a mere seven days after Appellees filed

the motion without giving Lumley an opportunity to respond. However, she recognizes the court realized it had prematurely granted Appellees' request and reinstated its original April 15, 2025 schedule. Appellant takes issue, however, with the trial court's return to the original schedule as set out in its April 15th order, as Lumley claimed her medical treatment required her to spend additional time in Korea beyond what was contemplated when setting the original deadlines.

{¶18} In response, Appellees focus on the deference given to a trial court in ruling on a motion for a continuance. Appellees point out that the April 15, 2025 scheduling order provided Appellant with more than five times the statutory response time. Appellees note that Lumley gave no explanation as to why she did not obtain independent counsel for Appellant knowing that she would be out of the country for an extended period of time, especially since she has done so for the instant appeal. Nonetheless, Appellees argue that there are no facts or law that would allow Appellant to succeed in the underlying action and that summary judgment was appropriate.

{¶19} The determination of whether to grant or deny a party's request for a continuance "is a matter that is entrusted to the broad, sound discretion of the trial judge." *In re Adoption of R.B.D.*, 2018-Ohio-2770, ¶ 17 (7th Dist.), citing *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. An appellate court will not reverse the denial of a continuance absent an abuse of discretion. *Id*. An abuse of discretion connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Nuby*, 2016-Ohio-8157, ¶ 10 (7th Dist.), citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶20} Where a party has moved to continue, a court should consider:

(1) the length of the delay requested; (2) if any prior continuances were requested and received; (3) the inconvenience to the parties and the court; (4) if the continuance is for legitimate reasons; (5) if the party requesting the continuance contributed to the circumstances giving rise to the request; and (6) any other relevant factors.

*Youngstown Metro. Hous. Auth. v. Barry*, 1996 WL 734017, *1 (7th Dist. Dec. 16, 1996), citing *Unger, supra*.

### Prior Continuances/Requested Length of Delay

**{¶21}** At Appellant's request, it already had been granted a greatly extended period in the initial scheduling order in this matter by the trial court. The court's schedule delayed action on the case from April 15, 2025, the date the scheduling order was entered, until October 1, 2025, which was the parties' deadline to file cross motions for summary judgment. While it is clear Appellees were not satisfied with the delayed schedule, Appellant did not take issue with this deadline until July 29, 2025, when it apparently became clear to Lumley that her return to the United States would be delayed beyond the originally planned two to three months.

**{¶22}** Despite the trial court's seemingly generous deferral to her planned trip, instead of attempting compliance with the delayed scheduling or hiring other counsel to represent Appellant, Lumley requested alternative periods of additional delay: either an indefinite delay or a 120-day delay. Considering the lengthy period already provided to Appellant, it was not unreasonable for the court to deny Lumley's request for a continuance. It appears from this record that the trial court was very generous in its attempt to accommodate Lumley, and any additional continuance would only serve to

Case No. 25 CA 0988

unnecessarily delay resolution of a fairly simple legal issue. This factor supports the trial court's decision.

*Inconvenience*

**{¶23}** We note that the parties are next-door neighbors, and a contentious relationship clearly exists between the parties, particularly as Appellees allegedly threatened to cut the shed in half if Appellant did not remove it. Further delay in resolution would not likely de-escalate the situation. The legal question in front of the court, as will later be discussed, was relatively straightforward and there was no necessity for further delay. This factor also weighs in favor of the trial court's decision.

*Legitimate Reasons/Contribution to Circumstance/Other Relevant Factors*

**{¶24}** This matter is somewhat unique for two reasons. First, Lumley is a sole practitioner who also happens to be the real party in interest to this litigation. Second, as Appellees point out, Lumley knew she would be out of the country on what she, herself, describes as a lengthy trip involving somewhat complex medical procedures and recovery. This would typically result in counsel obtaining outside co-counsel, or a self-represented party obtaining counsel. We note that Lumley chose not to represent her LLC on appeal, an action that, in hindsight, may have been more prudent in the trial court, given her situation.

**{¶25}** Prior to Lumley's departure from the United States, a pretrial conference was held where the court and opposing counsel did indicate a willingness to work with counsel and allow her to continue to represent the LLC while absenting herself from the country for a lengthy period. However, neither the trial court nor Appellees gave consent for the matter to pend indefinitely.

Case No. 25 CA 0988

**{¶26}** While the court did temporarily expedite the original scheduling order, the court realized why the original order was scheduled so far out of rule and reinstated the original order dated April 15, 2025, which was intended to provide Appellant with an accommodation. While the trial court did revert to its earlier, delayed scheduling order, this attempt by Appellees to somewhat expedite apparently spurred Appellant's counsel, Lumley, to request additional time, well beyond what the court originally gave her. Lumley sought either an indefinite continuance, or in the alternative, 120 day extension beyond the last date in the original scheduling entry.

**{¶27}** Appellant claims Lumley sought the additional time because her trip, which had been projected to take two to three months, was now to take at least seven months to complete. She told the court the unpredictability of IVF treatment and the intensive recovery period had led to a longer process than anticipated. Apparently believing that the trial court was mandated to grant a continuance sought due to medical reasons, Appellant now complains the court abused its discretion in failing to grant her new request for an additional lengthy period of time to commence any activity towards resolution of the case.

**{¶28}** While this record reflects that counsel stated she did not have access to the internet, she explained that she emailed her handwritten notes to a third party for filing with the court. (Appellant's Brf., p. 8.) Clearly, counsel had access to email, and thus had some internet capabilities. Appellant's brief contends that counsel "made the medically sound decision to focus on her treatment rather than monitor litigation correspondence." (Appellant's Brf., p. 7.) From this, it appears no progress could be

Case No. 25 CA 0988

made toward resolution not because Lumley lacked all access to the internet, but that she chose not to monitor her case.

**{¶29}** Lumley clearly chose self-representation of her LLC without seeking co-counsel despite understanding that her trip was somewhat open-ended and without an apparent certain return date. She claimed that as she is a sole practitioner, she was unable to provide co-counsel. This is clearly not the case, as she could have hired outside counsel to serve in that capacity.

**{¶30}** Appellant's counsel also claims she has been subject to some sort of invasion of privacy, as she has been forced to provide sensitive information related to her hormones, menstrual cycle, and fertility. She takes issue with the fact that she was "forced" to disclose these facts to the court. With any request for an extension, a party typically must disclose information related to the cause of the request for purposes of determining whether it the request should be granted. In so doing, Lumley is the one who chose how much, or how little, of her private medical information to share with the court. Conversely, Appellant appears to claim that the trial court should have been required to grant Lumley's request for extension, as it was based on her medical treatment. There is nothing in the rules or law that requires a court to grant any and all extensions on this basis.

**{¶31}** This factor also weighs in favor of the trial court's decision.

*Analysis*

**{¶32}** Based on our review of the relevant factors, it is apparent that all of the factors weighed against granting the requested continuance, here. The trial court did not err in denying Appellant's motion for a further delay in this case. The trial court acted well

within its discretionary decision making to deny any extension. Hence, Appellant's second assignment of error is without merit and is overruled.

## ASSIGNMENTS OF ERROR NOS. 1 & 3

Summary Judgment Cannot Be Granted Merely Because a Motion Is Unopposed, and Plaintiffs Failed to Satisfy Their Initial Burden Under Civil Rule 56.

The Trial Court Erred in Dismissing Defendant's Counterclaims as a Matter of Law.

**{¶33}** Turning to the actual matter in dispute between the parties, Appellant claims the trial court did not have enough evidence to grant Appellees' motion for summary judgment. It contends the court lacked sufficient evidence to decide the matter based solely on Appellees' motion. Appellant notes that as both parties purchased their respective properties in the summer of 2022, this explains why the date of construction of the shed is unknown. It is clear from the photograph that the shed is not newly built. Thus, Appellant's response could have provided facts to rebut the summary judgment sought by Appellees and the trial court should not have ruled prior to receiving some response by Appellant.

**{¶34}** Appellees respond that an encroachment on property owned by a political subdivision cannot be used for purposes of supporting an easement by prescription under Ohio law, and Appellant's claims in this regard are misguided.

**{¶35}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R.

Case No. 25 CA 0988

56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

{¶36} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id*. at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997).

{¶37} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that

have been filed in the case.  In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party.  *Temple*, 50 Ohio St.2d at 327.

**{¶38}** "A party claiming an easement by prescription must show, by clear and convincing evidence, a use of the property that is (1) open, (2) notorious, (3) adverse to the neighbor's property rights, (4) continuous, and (5) lasting at least 21 years." *Anderson v. Fleagane*, 2022-Ohio-1120, ¶ 30 (7th Dist.), citing *Andrews v. Passmore,* 2015-Ohio-2681, ¶ 9 (7th Dist.).  "Unlike adverse possession, a prescriptive easement does not require exclusive use; the adversity involves use of an easement, not the possession of land." *Id.,* citing *Gulas v. Tirone*, 2009-Ohio-5076, ¶ 24, 28 (7th Dist.).

**{¶39}** Significantly, the area of land at issue was not owned by either party until the Village vacated the alley.  Prior to this action, the Village owned the alley.  It is unquestionable that the Village is a political subdivision.  "[M]odern appellate court cases have held the state and political subdivisions are not subject to property loss by adverse possession or prescription, and have limited the holdings in the early Supreme Court cases to instances where there are large and valuable structures built on the city's property." *Hall v. Dasher*, 2022-Ohio-1735, ¶ 47 (5th Dist.), citing *Nusekabel v. Cincinnati Public School Employees Credit Union, Inc.,* 125 Ohio App.3d 427 (1st Dist. 1997); *1540 Columbus Corp. v. Cuyahoga Cty*., 68 Ohio App.3d 713 (8th Dist. 1990).

> The legal theory that adverse possession and/or prescriptive easements cannot be had against the state or a political subdivision has been limited in its application to cases in which the political subdivision or municipality is a party in the case, and has not been extended to cases in which private citizens assert the rights of the state or political subdivision.

Case No. 25 CA 0988

*Hall* at ¶ 49.

{¶40} The Village owned the alley at issue in the instant matter and in 2023 vacated it, conveying one-half of its width to each abutting property. There was no need for the Village to have been named a party in this action because all parties agree that the Village no longer has an interest in the alley. Instead, Appellees seek to protect their newly created interest in the alley. Appellees are not asserting any right of the Village, but their own newly created right to ownership of one-half of the alley. Because the maps and documents pertaining to the Village's vacation of this property were attached to Appellees' motion for summary judgment, they provided evidence that the Village did, in fact, vacate one-half of its width and ownership of the corresponding one-half was given to each parcel. Hence, evidence in the record proves the Village owned the alley until June 28, 2023.

{¶41} Because Ohio law provides that land owned by a political subdivision cannot be subject to an easement by prescription, any period of time Appellant's shed existed on the property at the time it was owned by the Village cannot be used by Appellant for purposes of proving its claim of easement by prescription. Suit was filed November 12, 2024, just over a year after the Village vacated the alley in favor of the parties. Clearly, Appellant cannot, under any scenario, prove its twenty-one year possession of the shed and the portion of the alley it sits on in order to show its ownership by Appellant under a theory of easement by prescription. Hence, the court properly granted summary judgment and accurately ruled on the issue of law.

{¶42} As to the issue of unclean hands, this is based on Appellees' alleged threat to cut the shed in half prior to the filing of the lawsuit. While, if true and carried out, such

action would have served to escalate the situation and would not have been advisable, the court did not err in determining that the alleged threat did not rise to the level of unclean hands and did not serve to impede an award of summary judgment in this matter to Appellees.

**{¶43}** Appellant's first and third assignments of error are likewise without merit and are overruled.

Conclusion

**{¶44}** Appellant challenges the decision of the court to deny a motion seeking an indefinite continuance, or alternatively a 120-day continuance, in this matter as counsel was out of the county seeking IVF treatment and had not returned within the timeframe she had originally contemplated. As her planned lengthy absence from the country was accommodated by the court in its original scheduling entry, the court did not abuse its discretion in refusing to allow another lengthy delay. In the alternative, she argues that the trial court erred in granting summary judgment in this case, which involves a shed owned by Appellant and partially located on Appellees' property. There is no fact in this record that could support Appellant's prescriptive easement in this case, as the parcels in question were owned by a municipal corporation until 2023, when the Village vacated the land and gave it to the parties. No time during the Village's ownership can be used by Appellant to support a claim for prescriptive easement, and Appellant only became the outright owner of the shed and her portion of the property some sixteen months before suit was filed by Appellees, well short of the statutory twenty-one year period. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Case No. 25 CA 0988

Robb, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

_____
**JUDGE CHERYL L. WAITE**

_____
**JUDGE CAROL ANN ROBB**

_____
**JUDGE KATELYN DICKEY**

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**